UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARK CORSI,

          Plaintiff,

vs.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

_____

DECISION
and ORDER

12-CV-6606T

## INTRODUCTION

Plaintiff, Mark Corsi ("Corsi" or "Plaintiff"), brings this action pursuant to the Social Security Act § 216(i) and § 223, seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record and is contrary to applicable legal standards.

On June 4, 2013, Plaintiff moved for summary judgment seeking to reverse the Commissioner's decision judgment. On July 19, 2013, the Commissioner cross-moved for judgment on the pleadings pursuant to 42 U.S.C. § 405 (g) on the grounds that the findings of the Commissioner are supported by substantial evidence. For the reasons set forth below, this Court finds that there is substantial evidence to support the Commissioner's decision. Therefore, the

Commissioner's motion for judgment on the pleadings is granted and the Plaintiff's motion is denied.

## PROCEDURAL HISTORY

On June 1, 2010, Plaintiff filed an application for DIB under Title II, § 216(i) and § 223 of the Social Security Act, alleging a disability since October 30, 2009 arising from morbid obesity, diabetes, leg infection, knee pain, high cholesterol, gastric reflux and back pain. T. 134-138, 154. Plaintiff's claim was denied on August 23, 2010. T. 88-91. At Plaintiff's request, an administrative hearing was conducted on August 2, 2011 before an Administrative Law Judge ("ALJ") at which Corsi testified and was represented by counsel. T. 33-79.

On September 14, 2011, the ALJ issued a Decision finding that Corsi was not disabled. T. 14-23. On October 25, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. T. 1-3. This action followed.

## BACKGROUND

Plaintiff is a 47 year old high school graduate with nursing training at Boces. T. 154-155. He worked as a taxi driver from early 2007 through October 30, 2009. T. 155. Prior to that position,

Plaintiff worked as a resident aide and counselor for an overnight health care facility from 2001 through 2005, a hall monitor and bus driver for a school from 1995 through 2003 and a cashier from 2003 until early 2007. T. 155.

Corsi spends a typical day taking medications, making his meals, watching television, showering, visiting friends and watching sporting events. T. 166. He also feeds and cares for his pets. T. 166. Corsi claims that he can no longer walk long distances, drive for extended periods of time, shovel snow, cut grass or sit for a long time. T. 166. Plaintiff enjoys attending sporting events on a weekly basis but is limited in his ability to sit or stand for long periods of time. T. 170. In his application papers, Corsi indicated he could walk 100 feet before resting for five to ten minutes. T. 171.

A. <u>Medical History</u>

Plaintiff was treated for left leg ceullulitis in May, 2007 and April and May, 2008. T. 262-263. He was treated with antibiotics and the issue appeared to be resolved. T. 262-263.

In March, 2009, the medical records from St. Joseph's Hospital in Elmira, New York outpatient primary care indicate that Plaintiff was off work for a week because of left knee pain. T. 227. He was also experiencing back pain. T. 227. Straight leg raises caused

tenderness over lumbar paraspinous muscles. There was no obvious swelling noted in the left knee. He was given Amrex samples and referred to a chiropractor. T. 227.

Corsi was examined by Nurse Practitioner Darlene Baltimore of St. Joseph's outpatient primary care unit on November 4, 2009 complaining of increased fatigue as well as cold-like symptoms. T. 209. His blood sugar levels were running high. Corsi was still driving a taxi and Ms. Baltimore directed him to stop working because it was unsafe to drive a taxi with uncontrolled diabetes. T. 209. Because Plaintiff did not want to go to Endocrinology, Ms. Baltimore referred Corsi to Nancy Goban, a nurse practitioner from Internal Medical Associates of the Southern Tier. Ms. Baltimore increased the Lantus dosage and advised Plaintiff to watch his diet more carefully and continue to monitor his blood sugar. T. 209.

Ms. Baltimore examined Plaintiff on December 9, 2009 for a follow up visit. T. 208. She noted that Corsi had cancelled his appointment with Nancy Goban for regulation of his sugar levels. Plaintiff denied any foot problems. Dr. Baltimore increased the Lipitor dosage, prescribed Ramipril and Metformin and instructed him to see Nancy Goban as soon as possible. T. 208.

Plaintiff was treated by Nurse Practitioner Nancy Goban on December 30, 2009 for diabetes follow up. T. 249. Ms. Goban noted

that Plaintiff's efforts to lose weight were unsuccessful and he does not exercise at all. T. 249. Although Plaintiff does not have frequent hypoglycemic episodes, he is over 160 on average 2 to 3 times each day. T. 249. She indicated that Plaintiff's glucose levels were poorly controlled because of misunderstanding the condition or treatment. T. 249. At this time, Plaintiff weighed 318 pounds and was taking Lantus, Metformin, Januvia, Lipitor, Aciphex, Ramipni and Actoplus Met. T. 249. Ms. Goban recommended Plaintiff no longer take Metformin but continue with Actosplus Met and gave guidance as to how much Lantus to take. T. 250.

Corsi was treated by Ms. Baltimore on January 18, 2010 for diabetes, hypertension and high cholesterol. T. 207. Dr. Baltimore noted that Plaintiff was feeling better, was off oral medications and now treating diabetes with Lantus at bed time and a sliding scale of Januvia and Actoplus. T. 207. Ms. Baltimore noted that Corsi told her he was not ready to go back to work and would like to be off three more weeks. T. 207. Ms. Baltimore cleared him to return to work in one month as long as his sugars stabilized. T. 207.

In February, 2010, Plaintiff was treated at a podiatric and foot care facility to educate Plaintiff on diabetic footcare and arrange regular foot care. T. 210. Also in February, 2010, medical notes from St. Joseph's Hospital outpatient primary care facility indicate

that Plaintiff expressed his desire to return to work. T. 225. He was instructed to continue with diabetes management and his sugars were lower. T. 225.

Plaintiff was treated monthly by Ms. Goban through June, 2010 for diabetes management. T. 251-257. She adjusted the amount of Lantus he would take and guided him on how to best manage his sugar level. During June, 2010, Corsi was also treated for left lower leg cellulitis. T. 259-261.

An independent medical examination report was prepared by Dr. Pranab Datta on August 6, 2010. T. 266-270. Dr. Datta noted that Corsi told her that he has had diabetes since 2003 with blood sugar levels ranging between 280 to 300. T. 266. He also claimed to have a history of low back pain starting around 2006. He claimed to have pain from prolonged sitting or standing but he could walk about a quarter of a mile before he feels pain. T. 266. Corsi told Dr. Datta that he had intermittent swelling and infection of the left leg and uses knee high stockings for treatment. T. 266. During the examination, Corsi indicated that he cooked, but does not clean or do laundry. T. 267. He could shop, shower and dress himself. His weight at the time of the examination was 329 pounds at 5 feet 7 inches tall. T. 267. Dr. Datta noted that Plaintiff did not appear to be in acute distress and exhibited a normal gait although he did at times

limp and favor the left leg. T. 267. He needed no assistive devices and was able to walk on heels with little difficulty. T. 267. The cervical spine showed full flexion, extension, lateral flexion bilaterally and full rotary movement bilaterally. T. 268. Similarly the lumbar spine was normal. T. 268.

Dr. Datta concluded that Plaintiff suffered from diabetes, hypertension, obesity and intermittent low back pain of unknown etiology. T. 269. He had no limitations with speech, hearing, sight, and no limitations with upper extremities for fine and gross motor activities. Dr. Datta did find Plaintiff had "mild limitations for prolonged sitting, standing and walking" and "mild to moderate limitations for climbing." T. 269. Dr. Datta also advised that Plaintiff avoid heavy lifting, pushing, pulling or carrying. T. 269.

A radiology report dated August 11, 2010 of Plaintiff's lumbosacral spine showed that he had degenerative spondylosis at L2-L3 and L4-L5. T. 271.

A Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities form was completed by Dr. Paul Povanda on October 12, 2010. T. 279-283. In this report, Dr. Povanda indicated that Plaintiff was able to lift or carry on a sustained basis frequently up to 10 pounds but only occasionally 11 to 20 pounds. T. 279. He was to never lift more than 20 pounds.

Plaintiff was not limited to use of hands but could only occasionally reach overhead or push and pull. T. 280. Plaintiff was described as never able to stoop, bend, crouch, squat, kneel, climb ladders but was occasionally able to twist or climb stairs. T. 281. Because of his lumbosacral spine, Plaintiff was limited to sitting, standing or walking less than two hours in an 8 hour work day and only able to sit stand or walk at any one time up to 15 minutes. T. 281. Dr. Povanda also noted that Plaintiff's pain causes him to frequently lose attention and concentration and is only able to tolerate stress for short periods of time. T. 282. Plaintiff was to avoid all exposure to heights, temperature extremes and vibrations and avoid significant exposure to moving machinery, chemicals, humidity, dust and fumes. T. 282.

On April 28, 2011, Plaintiff presented to St. Joseph's Hospital in Elmira with complaints of chronic lower back pain. T. 291. He requested stronger pain medication. The examination showed that Plaintiff had no edema, could move upper and lower extremities without difficulty and could change positions from sitting to standing with little difficulty. T. 291. Plaintiff was continued on his current medication regimen including continuing with Celebrex. T. 292. He was also prescribed tramadol as needed for pain relief and instructed to return for follow up in three months. T. 292.

At the follow up examination in August, 2010, Plaintiff again complained of chronic back pain. T. 298. Ms. Baltimore noted that Plaintiff had mild to moderate limitations for climbing, mild limitations for prolonged sitting, standing or walking and was to avoid heavy pushing, pulling, lifting or carrying. T. 298. Plaintiff's blood sugar levels were high because he claimed he did not have the co-pay money to purchase insulin. T. 298. He was given samples of Humalog, Lantus, Celebrex, Januvia, ActosPlus Met, and Zegerid in place of omegrazole. T. 298.

Corsi was next examined by Ms. Baltimore in November, 2010 after an automobile accident in a parking lot. T. 296. Although CT of the brain was negative, Plaintiff complained of a headache and pain in the back of his head and neck. T. 296. Plaintiff had lost 20 pounds and noted that his treatments with Ms. Goben have helped him better regulate his blood sugar levels. T. 296. Ms. Baltimore advised Plaintiff to take Ibuprofen for pain and to try Flexeril, warm moist heat and gentle neck stretching. T. 297. In the follow up examination in December, 2010, Plaintiff had no complaints and his blood glucose levels were much improved. T. 295.

Dr. Povanda completed a questionnaire on May 25, 2012 regarding Plaintiff. T. 318-320. In this report, Dr. Povanda noted that he treated Plaintiff for a herniated lumbar disc L4-L5 on May 22, 2012.

T. 318. Dr. Povanda noted that upon review of Plaintiff's medical records from his office that Plaintiff was obese and that the obesity "exacerbates limitations caused by the other medical impairments" with respect to standing, walking, stooping, bending, work pace and the need to rest. T. 318. Dr. Povanda indicated that there no amount or frequency of rest periods would allow Plaintiff to work. He checked the box saying that Plaintiff needed complete freedom to rest frequently without restriction. T. 319. Dr. Povanda would expect more than four absences each month if Plaintiff were to return to full time work. T. 319. He further found that Plaintiff's ability to work is severely restricted in his ability to sustain work pace. T. 319.

An MRI of the lumbar spine from May 25, 2012 showed an herniated disc at L5 and L1 causing spinal stenosis at L5-S1. There was a moderate disk bulge at L3-L4. T. 321.

B. <u>Plaintiff's Hearing Testimony</u>

Plaintiff testified that he worked as a bus driver, stocker of shelves in Walmart, home health aide, and for a recreation association. T. 39-43. As part of his responsibilities working for the recreation association, Plaintiff set up equipment, signs and the fields for games. T. 43-44. He was required to carry baseball bases weighing as much as 15 to 20 pounds and place them on the field. T. 44. Plaintiff performed this work until November, 2010 when he was

let go because he couldn't do the required lifting of heavier items.
T. 44-46.

Plaintiff testified that he can't work because of his diabetes,
back and knee pain. T. 46-47. He was receiving unemployment benefits
until July 11, 2011 and continued looking for work. T. 75. Corsi
testified that he could perform sit down jobs such as a secretary or
answer phones and that he applied for these jobs via the internet.
T. 75. Plaintiff also applied for part-time sales associates jobs at
the mall. T. 77. He claimed that he had back pain all of the time as
well as pain in the legs. T. 63. Corsi testified that he experiences
sweatiness and headaches about one or twice a week from uncontrolled
sugar levels and that he needs to lie down twice a day to relieve
back pain. T. 64. When he sweats and shakes from high blood sugar, it
takes five to ten minutes to stop by drinking water, taking insulin
or changing his eating habits. T. 65.

Plaintiff testified that he experiences no side effects from his
medications and he takes a nap every day for approximately 30 to
45 minutes. T. 66. He can walk 10 to 15 minutes before he has to sit
down because he is tired, out of breath and his back bothers him.
T. 67. He can sit 20 to 30 minutes without becoming uncomfortable and
needing to change position. T. 67. Corsi testified that he could lift

20 pounds occasionally and he is able to go up stairs using the rail. T. 67.

Plaintiff testified that he sees Nurse Practitioner Nancy Goban every three months for monitoring his diabetes but that it remained uncontrolled. T. 48-49. When he wakes up in the morning, his blood sugars were on average 165 or 170 and but his sugar levels were becoming more controllable. T. 49.

Corsi testified that Dr. Povanda was treating him for back pain but most often he was treated by a nurse practitioner. T. 50. Plaintiff testified that he does not see Dr. Povanda often and thinks that he last saw him nine months prior to the hearing. T. 50. Plaintiff takes Tramadol for back pain and had not seen a back specialist. T. 50.

Dr. Melanowsi was treating Plaintiff for cellulitis. T. 52. Plaintiff testified that he was hospitalized for cellulitis in late 2009, early 2010 as well as in 2008. T. 52-53. Plaintiff wears stockings to keep the swelling down. T. 53.

Plaintiff testified that his weight was approximately the same as when he worked as a taxi driver. T. 54. According to Plaintiff, his weight does not affect him except that he gets tired and affects his diabetes. T. 54. Plaintiff testified that he cannot walk far before he has to sit down and rest. T. 55.

Corsi lives in a single family house with his wife. T. 55-56. The house has stairs that Corsi goes up twice a day to go to his bedroom on the second floor. T. 56. Corsi can wash, dress and get his own meals. Plaintiff testified that he sometimes does indoor house chores but these were most often done by his wife. He shops for groceries at times but most often it is done by his wife. Plaintiff spends his days watching television, napping and visiting friends. He is able to drive his car 20 to 25 minutes without a break. T. 57-60.

Plaintiff last worked as a taxi driver on October 30, 2009 after three years when he stopped because of his back pain and diabetes. T. 61.

**DISCUSSION**

I. <u>Scope of Review</u>

Title 42 U.S.C. §405(g) directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). The Court's scope of review is limited to determining whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the

plaintiff's claim. Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983).

Judgment on the pleadings pursuant to Rule 12(c) may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that the plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. see generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

II. The Commissioner's Determination of the Onset Date is Supported by Substantial Evidence in the Record

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. In doing so, the ALJ adhered to the Social Security Administration's five step sequential analysis evaluating disability benefits. (Tr. 12-18) The five step analysis requires the ALJ to consider the following: 1) whether the claimant is performing substantial gainful activity; 2) if not, whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activities; 3) whether the claimant suffers a severe impairment that has lasted or is expected to last for a continuous period of at least twelve

months, and his impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled; 4) if not, the ALJ next considers whether the impairment prevents the claimant from doing past relevant work given his or her residual functional capacity; 5) if the claimant's impairments prevent his or her from doing past relevant work, whether other work exists in significant numbers in the national economy that accommodates the claimants residual functional capacity and vocational factors, the claimant is not disabled. 20 C.F.R. §§404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

Under step one of the process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity at any time during the period from his alleged onset date of October 30, 2009. T. 16. The ALJ next found that the Plaintiff suffered from the following severe impairments: obesity, diabetes, cellulitis in the lower extremities, and chronic back pain. T. 17. At step 3, The ALJ found that Plaintiff's impairments did not meet or medically equal the listed impairments in Appendix 1, Subpart P. T. 18. Further, the ALJ found that Plaintiff had the residual functional capacity to perform the full range of sedentary work in that the Plaintiff was able to occasionally lift or carry ten pounds and less than ten pounds frequently, stand or walk for about two hours in an eight hour workday and sit for about six hours in an eight hour work day. T. 19.

The ALJ next determined that Plaintiff was not able to perform his past relevant work. T. 22. Finally, the ALJ determined that considering Plaintiff's age, education, past relevant work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could perform. T. 22.

Plaintiff argues that the ALJ erred by: 1)failing to properly apply the treating source rule; 2) failing to properly evaluate the medical evidence; and 3) failing to properly establish the Plaintiff's residual functional capacity. I find that there is substantial evidence in the record to support the ALJ conclusion that the Plaintiff was not disabled within the meaning of the Social Security Act.

A. Substantial Evidence in the Record Supports the ALJ's Evaluation of the Medical Evidence

Plaintiff first contends that the ALJ failed to properly apply the treating physician rule. He argues that the ALJ failed to accord controlling weight to the opinion of Plaintiff's treating physician, Dr. Povanda, concerning his functional capacity assessment.

Pursuant to the treating physician rule, the medical opinion of the physician engaged in the primary treatment of a claimant is given "controlling weight" if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An ALJ may decline to give controlling weight to a treating physician's opinion based on, inter alia, "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); Clark v. Commissioner of Social Security, 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(d)). The Second Circuit requires that the ALJ's consideration of the treating source evidence be explicit in the record. Burgin v. Astrue, 2009 WL 3227599 (2d Cir. October 8, 2009). Here, the ALJ properly considered the weight to be given the conflicting medical opinions and articulated good reasons for not giving Dr. Povanda's opinion controlling weight.

The ALJ gave significant weight to the opinion of Dr. Datta, the consultative examiner. Dr. Datta found Plaintiff to be mildly limited for prolonged sitting, standing, and walking and that he should avoid heavy lifting, pushing and pulling. T. 21, 269. Dr. Datta's observations of Plaintiff walking with a normal gait, having negative straight leg raising, and finding a full range of motion of Plaintiff's shoulders, elbows, forearms, wrists, hips, knees and ankles were consistent with performing sedentary work. T. 21,

268-269. The ALJ specifically found that Dr. Datta's report is consistent with Plaintiff's activities of daily living and the conservative medical treatment by his treatment providers. Plaintiff indicated that he shopped, cooked, dressed and bathed himself, and socialized with friends. He was also able to climb stairs at home twice a day. T. 19-20. Moreover, Plaintiff testified that he sought part-time work, and even certified that he was ready willing and able to work during the time period that he collected unemployment benefits. T. 74-75.

Conversely, the ALJ accorded no weight to Dr. Povanda's finding that Plaintiff could sit, stand and walk for two hours with the need to change positions every 15 minutes because it was not consistent with the medical evidence. T. 21. First, the ALJ noted that there is no evidence that Dr. Povanda was a regular treatment provider for Plaintiff. Plaintiff's treatment at Dr. Povanda's office was almost entirely conducted by nurse practitioners or physicians' assistants. T. 21. Plaintiff could not remember the last time he saw Dr. Povanda and there were no medical reports that showed he ever actually was seen by this doctor. T. 21. There were few office notes from Dr. Povanda and there was no clinical examination imaging studies or other evidence that Dr. Povanda considered any source of Plaintiff's functional limitations other than Corsi's own statements. T. 21. Baladi v. Barnhart, 33 Fed. Appx. 562, 564 (2d Cir. 2002) (ALJ not

required to give controlling weight to opinion based upon only subjective complaints and unremarkable test results).

I find that the ALJ correctly held that Dr. Povanda's opinion concerning Plaintiff's residual functional capacity was not consistent with the record as a whole and, therefore, not entitled to greater weight than the findings of Dr. Datta.

B. Substantial Evidence Supports the ALJ's Analysis of Obesity and Diabetes in Determining Plaintiff's Residual Functional Capacity

Plaintiff next argues that the ALJ failed to properly assess the effect of Plaintiff's obesity in determining his residual functional capacity.

Social Security Ruling 02-1p directs ALJs to consider whether a claimant's obesity significantly limits his or her ability to do work activities, including whether it makes other ailments worse. The ruling provides: "[o]besity can cause limitation of function . . . An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 02-1p(8). The ruling also provides that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity . . . As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." Id.

Here, the ALJ's decision explains that plaintiff's obesity was considered in determining his residual functional capacity. In his decision, the ALJ listed morbid obesity as one of Plaintiff's severe impairments. T. 22. The ALJ acknowledged that the examiners who offered an opinion as to Plaintiff's residual functional capacity all specifically noted Plaintiff's obesity and factored it into their medical opinions. "By weighing those opinions I have likewise fully considered the Claimant's obesity. To assign any additional limitations due to the Claimant's weight would be an impermissible substitution of my own medical opinion." T. 22.

Here, the ALJ discussed the medical providers' diagnoses and opinions including their repeated acknowledgement that Plaintiff was obese. Obesity was part of their assessments as to Plaintiff's limitations and these opinions were incorporated into the ALJ's assessment as to Plaintiff's residual functional capacity. The ALJ's conclusion of the overall effect of Plaintiff's obesity is supported by the medical records. Drake v. Astrue, 443 F.App'x 653, 657 (2d Cir. 2011)("[T]he ALJ implicitly factored [the plaintiff's] obesity into his RFC determination by relying on medical reports that repeatedly noted [the plaintiff's] obesity and provided an overall assessment of her work-related limitations.")

Accordingly, the record clearly reflects that the ALJ adequately considered Plaintiff's obesity and its impact on his other conditions in compliance with with SSR 02-1p. See, Talavera v. Commissioner of Social Security, 2011 WL 3472801, at *12 (E.D.N.Y. Aug. 9, 2011) (The ALJ properly considered the plaintiff's obesity because, *inter alia*, she listed "'obesity' as one of [the plaintiff's] impairments, which she assumed to be severe."), *aff'd in separate opinions*, 697 F.3d 145 and 2012 WL 4820808 (2d Cir. 2012); Cruz v. Barnhart, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006)(no error where "the ALJ made specific mention of [the plaintiff's]obesity in his findings of fact").

Similarly, Plaintiff also argues that the ALJ failed to properly evaluate the effect of diabetes on his Residual Functional Capacity. He contends that the medical records show poor control of sugar levels. The ALJ acknowledged that the medical records reflect that Plaintiff has had high blood sugars and indeed lists diabetes as one of Plaintiff's severe impairments. However, the ALJ also noted that Plaintiff's statements regarding the intensity, frequency and limiting nature of his impairments to be partially credible. T. 21. Plaintiff's medical treatment had been conservative, Plaintiff made little to no attempt to exercise, lose weight, be compliant with diabetes medications or control his eating habits. T. 20, 21. I find

substantial evidence to support the ALJ's evaluation of Plaintiff's condition with regard to diabetes.

   C. Substantial Evidence in the Record Supports the ALJ's
      Determination of Plaintiff's Residual Functional Capacity to
      Perform Sedentary Work

Finally, Plaintiff contends that the ALJ erred by resting the residual functional capacity finding on the exertional level of sedentary work without taking into account Plaintiff's limitation with regard to his ability to reach overhead or push and pull. Plaintiff points to the residual functional capacity form that was completed by Dr. Povanda in support of his position that he was limited in these capacities. Further, Plaintiff argues that the ALJ's residual functional capacity analysis failed to account for Plaintiff's limitations in his ability to sit, stand, walk, stoop, bend, crouch, squat, kneel and climb ladders or stairs.

In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 404.1545(a)(3)-(4). It is within the province of the ALJ to weigh conflicting evidence in the record and credit that which is more persuasive and consistent with the record as a whole. See, e.g., Veno v Barnhart, 312 F. 3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the

Commissioner to resolve.") (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 399 (1971)); <u>Schaal v. Apfel</u>, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record.")

Here, the ALJ concluded that although Plaintiff had some limitations, the evidence did not support the presence of limitations that would preclude Plaintiff from performing a range of sedentary work. (Tr. 19)   Sedentary work involves lifting no more than ten pounds and involves limited walking or standing. 20 C.F.R. § 404.1567(a).  The ALJ reached this conclusion from a review of all of the relevant medical evidence as well as evaluating Plaintiff's subjective complaints.

The ALJ properly considered both Dr. Datta's and Dr. Povanda's assessments of Plaintiff's functioning. T. 21-22. As noted above, the ALJ accorded probative weight to Dr. Datta's opinion finding it was consistent with the record as a whole.  The ALJ properly considered the weight to be given the conflicting medical opinions and articulated good reasons for not giving Dr. Povanda's opinion controlling weight.

Moreover, the ALJ noted that Plaintiff showed consistent improvement with treatment and there was a lack of objective evidence suggestive of back pain other than an x-ray of the lumbosacral spine

showing degenerative spondylosis. The ALJ considered Plaintiff's activities of daily living; that he cooked, shopped intermittently, attended to personal care independently, and socialized with friends. Plaintiff appeared in no distress exhibiting a normal gait and stance, walked on heels with little difficulty and required no help getting on or off the examination table. Nurse Practitioner Gonzalez noted Plaintiff being able to move his upper and lower extremities without difficulty, changed positions from sitting to standing without difficulty and having muscle strength in his upper and lower extremities. The ALJ noted that Dr. Datta's findings of a mostly normal gait, negative straight leg raising, and finding a full range of motion in Plaintiff's shoulders, elbows, forearms, wrists, hips, knees and ankles were all consistent with sedentary work. T. 21. It is noted that, although the ALJ did not give weight to Dr. Povanda's opinion, Dr. Povanda's own finding that Plaintiff could lift and carry up to 20 pounds occasionally and ten pounds frequently is actually less restrictive than the ALJ's finding of sedentary work. I find substantial evidence in the record to support the ALJ finding of Plaintiff's residual functional capacity.

## CONCLUSION

After careful review of the entire record, and for the reasons stated, this Court finds that the Commissioner's denial of DIB was

based on substantial evidence and was not erroneous as a matter of law. Accordingly, the Commissioner's decision is affirmed. For the reasons stated above, the Court grants Commissioner's motion for judgment on the pleadings (Dkt. No. 8). Plaintiff's motion for judgment on the pleadings is denied (Dkt. No. 7), and Plaintiff's complaint (Dkt. No. 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
Honorable Michael A. Telesca

United States District Judge


DATED:    October 2, 2013

          Rochester, New York